1

2

3

4

LATHAM & WATKINS LLP
  Perry J. Viscounty (Bar No. 132143)
  *perry.viscounty@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
714.540.1235 / 714.755.8290 Fax

5

6

7

8

9

LATHAM & WATKINS LLP
  Jennifer L. Barry (Bar No. 228066)
  *jennifer.barry@lw.com*
  Patrick C. Justman (Bar No. 281324)
  *patrick.justman@lw.com*
  Adam A. Herrera (Bar No. 328043)
  *adam.herrera@lw.com*
12670 High Bluff Drive
San Diego, CA  92130
858.523.5400 / 858.523.5450 Fax

10

11

Attorneys for Plaintiff
ENTREPRENEUR MEDIA, LLC

12

UNITED STATES DISTRICT COURT

13

CENTRAL DISTRICT OF CALIFORNIA

14

SOUTHERN DIVISION

15

16

ENTREPRENEUR MEDIA, LLC,
a Delaware limited liability company,

17

Plaintiff,

18

v.

19

20

DAVID SCHOOLS, an individual;
and DOES 1-10,

21

Defendants.

22

23

24

25

26

27

28

CASE NO. 8:23-cv-01863

**Complaint For:**

**(1)  Trademark Infringement
      (Lanham Act, 15 U.S.C. § 1114)**

**(2)  Unfair Competition/False
      Designation of Origin
      (Lanham Act, 15 U.S.C. § 1125(a))**

**(3)  Common Law Trademark
      Infringement**

**(4)  Common Law Unfair Competition**

**<u>DEMAND FOR JURY TRIAL</u>**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

# COMPLAINT

## NATURE OF ACTION

1.      Plaintiff Entrepreneur Media, LLC ("EM") brings this Complaint against David Schools and Does 1-10 for (i) federal trademark infringement and false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*. and (ii) common law trademark infringement and unfair competition under California law.  EM alleges, with knowledge concerning its own acts and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

## THE PARTIES

2.      EM is a Delaware limited liability company with its principal place of business at 2 Executive Circle #150, Irvine, California 92614.

3.      Defendant David Schools ("Schools") is an individual who owns and operates a business that provides goods and services throughout the United States, including California and in this District, under the ENTREPRENEUR'S HANDBOOK mark, along with an accompanying E logo.

4.      Does 1-10 are persons or entities responsible in whole or in part for the wrongdoing alleged in the Complaint ("Doe Defendants").  Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts.  EM will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

5.      At all relevant times, Schools and Doe Defendants (collectively, "Defendants") acted as the principal, agent, and/or representatives of each of the other Defendants.  Any action by one of the Defendants was in the course and scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of each of the other Defendants.

6.     Defendants have conducted business throughout the United States, including California and in this District, using the ENTREPRENEUR'S HANDBOOK mark and an accompanying E logo.

7.     As fully detailed below, Defendants have used the ENTREPRENEUR'S HANDBOOK mark and E logo (collectively referred to as the "Infringing Marks") in a manner that violates EM's longstanding and strong rights in the ENTREPRENEUR® mark and EM's E logo.

## JURISDICTION AND VENUE

8.     Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EM's claims for relief for violation of the Lanham Act.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over EM's state law claims because they are joined with substantial and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over EM's state law claims pursuant to 28 U.S.C. § 1367(a) because all of EM's claims arise out of a common nucleus of operative facts.

9.     This Court has personal jurisdiction over Defendants because Defendants have: (a) conducted substantial business in the State of California and this District by advertising, targeting, offering, selling, and providing their goods/services to residents of this District; (b) derived financial benefits from residents of the State of California by doing so; (c) purposefully availed themselves of the privilege of conducting business in the State of California; and (d) sought the protection and benefits of the laws of the State of California.  In addition, the causes of action arise from the Defendants' activities within and actions targeted at the State of California.

10.     Venue in this Court exists under 28 U.S.C. § 1391(b)(2), inasmuch as a substantial part of the events giving rise to EM's claims occurred in this District.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

### EM and Its Successful ENTREPRENEUR® Brand

11.     For over forty years, EM (together with its predecessor companies) has published magazines and books, which provide editorial content and other information, as well as offered products and services related, or of interest, to businesses, business owners, and prospective business owners.

12.     EM's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

13.     EM is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR name in their titles. ENTREPRENEUR® magazine is published six times per year with a current print and digital paid circulation, including both subscriptions and single-copy sales, of more than 400,000 copies in the United States and worldwide.

14.     ENTREPRENEUR® magazine routinely features articles about and interviews with some of the biggest names in the business and entertainment community, as shown here:



15.     ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EM's top-secret formula:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

COMPLAINT
DEMAND FOR JURY TRIAL



16.    EM also publishes and distributes in the United States and worldwide over 120 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR PRESS® imprint, and with over 2.5 million books sold, including translations in multiple languages throughout the world:



17.    EM also conducts seminars, webinars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses.  EM has launched a program through its print and digital magazine, ENTREPRENEUR®, and its website at *entrepreneur.com*, entitled ENTREPRENEUR CHAMPIONS OF SMALL BUSINESS™, in which it identifies a number of America's largest companies, and their specific programs, which excel in providing funding and other specific services designed to help small businesses and entrepreneurs start and grow their businesses.  In addition, EM has created, and for the last several years offered and sponsored, an exclusive online subscription  program under the ENTREPRENEUR LEADERSHIP NETWORK® brand, whereby selected industry experts provide their advice, ideas and other content to help educate EM's millions of website visitors—both existing and

potential business owners and entrepreneurs.  Over the years, EM has also sponsored events, which have included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference sponsored by Canon USA, and (iii) the *Entrepreneur 360™*, a conference sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and American Airlines.

18.     In addition to its website at *entrepreneur.com*, which it has owned and operated continuously since 2002, EM also disseminates and markets its content and services through its mobile apps, and its various social media channels on such platforms as Facebook®, YouTube®, Instagram®, and LinkedIn®, and with a total of over 15 million followers.

19.     The website at *entrepreneur.com* has recently averaged more than eight million unique users and more than twelve million page views per month.

20.     EM has also launched apps for iPhones/ iPads and Android:



21.     EM produces and offers a variety of podcasts, on its website at *entrepreneur.com*, and also distributed under the ENTREPRENEUR Mark on Spotify and Apple Podcast, as well as other outlets:

**Entrepreneur**
By Small Business Podcast by Entrepreneur Media
To listen to an audio podcast, mouse over the title and click Play. Open iTunes to download and subscribe to podcasts.

**Description**
These lively discussions bring Entrepreneur Media's journalists together with the most interesting, intriguing minds and leaders to discuss the challenges and rewards of entrepreneurship and innovation.

| | Name | Description | Released | Price | |
|---|---|---|---|---|---|
| 1 | #22: The Woman Who Got... | How do you convince t... ℹ | 12/13/2017 | Free | View in iTunes › |
| 2 | Practices to Conquer Stres... | How do you eliminate ... ℹ | 12/12/2017 | Free | View in iTunes › |
| 3 | Creating Your 2018 Tech... | Keep industrious hack... ℹ | 12/12/2017 | Free | View in iTunes › |
| 4 | Producing legends with D... | Television producer w... ℹ | 12/12/2017 | Free | View in iTunes › |

View in iTunes

22.     In addition to the ENTREPRENEUR Mark, EM has also offered its various goods and services under its "E" logo (the "E Logo"), an example of which is shown below:



23.     EM has used the E Logo to develop, create, distribute, market, advertise, and sell a wide variety of goods and services.  EM has used the E Logo since as early as 2013.

24.     EM's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships include: (i) annual rankings of top undergraduate and graduate colleges for entrepreneurship by The Princeton Review; (ii) webinars on topics such as leadership, starting and running a business, and marketing and social media, sponsored by such well-known companies as Comcast Business and Oracle NetSuite® ; and (iii) videos presented by business leaders, such as the co-founder of Netflix® and the president and owner of In-N-Out Burger.  EM's past co-branding relationships have included: (i) contests

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

sponsored by General Motors and Canon USA; (ii) content provided and branded by CNBC, Reuters, NFL Players Association, and Business Insider; and (iii) Great Place to Work® (annual Best Small & Medium Workplaces rankings).

25.     Most recently, EM has partnered with Yelp® to create AMERICA'S FAVORITE MOM & POP SHOPS™, an annual listing and ranking of 150 of America's most popular independently owned and operated small businesses throughout the U.S.  EM has also partnered with Yelp® since 2020 to create a series of podcasts entitled ***Behind the Review***, featuring conversations with business owners and reviewers about how small businesses can best respond to the needs and expectations of their customers.  In addition, EM has: (i) partnered with Steve Case's *Rise of the Rest*™, a nationwide program to promote entrepreneurship in start-up ecosystems in middle America; (ii) hosted a contest with Canon USA under the rubric *Project Grow Challenge*, in which businesses were awarded money based on how they proposed to grow their businesses through increased productivity and consumer awareness; and (iii) partnered with Chivas Brothers Limited as its exclusive media content partner, in connection with and support of Chivas' annual event known as *The Venture*, a worldwide competition to discover, celebrate, and award with investment dollars extraordinary startup businesses creating positive social change.

26.     Through careful cultivation of its various products and services, EM has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.

27.     EM has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR Mark.  Through EM's widespread and continuous use of the ENTREPRENEUR Mark, it has acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EM.

28.     The fame and quality of the products and services bearing the ENTREPRENEUR Mark have been widely recognized through industry awards and commendations.  For example, *ENTREPRENEUR* magazine was rated #1 among the top twelve "Most Relevant Business Magazines for Entrepreneurs in 2023" by Altar.io, and was a finalist in two categories in the 2018 Folio Digital Awards for "Best Website Relaunch" and "Best User Experience."  Additionally, two of EM's editor-led podcasts recently earned recognition:  the "Problem Solvers" podcast series earned the 2018 Digiday Publishing Award for "Best Use of a Podcast" and the "How Success Happens" podcast series was a finalist in the 2018 Folio Digital Awards.  EM has also been honored as a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious *Maggie* award in 2008, 2009, 2010, and 2011 from the Western Publishing Association.  EM's website at *entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EM has also received multiple Integrated Marketing Awards from MIN for its magazine and website, including being selected as an awards finalist in 2015.

29.     In addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business advertising.  EM's management and staff have also been recognized for their contributions to publishing and the media industry, including such awards and recognitions in 2015 as (i) Folio's designation of an EM staff writer as one of the "Top Women in Media," and (ii) Fast Company's recognition on Twitter of EM's Editor-in-Chief as one of the "25 Smartest Women in Media."

## EM's Intellectual Property Rights

30.     EM owns, and has obtained United States federal registrations for, the ENTREPRENEUR Mark, as well as a family of related marks incorporating the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968 August 25, 1987 |
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises 41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032 October 30, 2001 |
| ENTREPRENEUR | 38:  Streaming of video and digital material on the Internet | 4,260,948 December 18, 2012 |
| ENTREPRENEUR | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424 June 4, 2013 |
| ENTREPRENEUR | 9: Pre-recorded audio and audiovisual recordings of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, in the form of downloadable recordings 38: Streaming of audiovisual and multimedia content via the internet; transmission and delivery of audiovisual and multimedia content via the internet; | 5,256,907 August 1, 2017 |

COMPLAINT
DEMAND FOR JURY TRIAL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | video-on-demand transmission services; mobile media services in the nature of electronic transmission, wireless broadcasting and electronic delivery of audio, video and multimedia entertainment content, namely, text, data, images, audio, video, and audiovisual files provided via the internet; video broadcasting services over the internet or other communications network, namely, electronically transmitting video clips; internet broadcasting services; providing streaming of audio and video in the nature of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, namely, audio, visual, and audiovisual matter for others via global computer networks; broadcasting and transmission of radio, and internet programs; broadcasting of internet programs via radio and television; broadcasting of programs provided over the internet; streaming audio, video, and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks; providing video on-demand transmission of audio, video and audiovisual content, data and information; transmission of audio, video and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks. 41: Entertainment services, namely, the production, presentation, distribution and syndication of on-going television, internet and non-downloadable audio and audiovisual recordings, all of the aforementioned concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business | |
| ENTREPRENEUR | 25: Clothing, namely, shirts; fleece pullovers; pullovers; shirts; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; T-shirts; Headgear, namely, hats, caps. | 4,690,619 February 24, 2015 |

COMPLAINT
DEMAND FOR JURY TRIAL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937 September 30, 2014 |
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running, and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,064 July 22, 2008 |
| Entrepreneur Press | 16: Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9: Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter; namely, magazines pertaining to business opportunities | 3,204,899 February 6, 2007 |
| ENTREPRENEUR VOICES | 9: Downloadable digital books in the nature of e-books, namely, a downloadable series of non-fiction e-books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, including inspirational stories and timeless advice 16: Paper goods and printed matter, namely, a series of non-fiction books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and | 5,854,545 September 10, 2019 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
|  | unique perspectives on various hot and trending topics of interest to entrepreneurs,  new and existing business owners and members of the general public, and inspirational stories and timeless advice |  |

31.     The above marks are collectively referred to as the "EM Marks."  The above registrations are collectively referred to as the "EM Registrations."

32.     EM's five U.S. registrations for the ENTREPRENEUR Mark (Nos. 1,453,968; 2,263,883; 2,502,032; 4,260,948; 4,345,424; 4,690,619) and several other of the foregoing registrations are also incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EM's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

33.     Further, the EM Registrations constitute prima facie evidence that the EM Marks are valid, and that EM is entitled to the exclusive use of the EM Marks in commerce throughout the United States on the goods and services listed in the registrations.

34.     EM, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the EM Marks, and in particular under the ENTREPRENEUR Mark.  In fact, EM has used the ENTREPRENEUR Mark in commerce for over forty years, having first adopted that mark for magazines at least as early as May 2, 1978, which is famous, well-known, and recognized as identifying goods and services that originate from EM.

35.     Through careful cultivation of its goods and services provided under the EM Marks, and in particular the ENTREPRENEUR Mark, EM has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.  Through

COMPLAINT
DEMAND FOR JURY TRIAL

EM's widespread and continuous use of its family of EM Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EM.

36.     Additionally, EM has developed strong common law trademark rights to the E Logo.  Indeed, through EM's widespread and continuous use of its E Logo, the logo has acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EM.

37.     Numerous courts across the country have recognized the strength of the EM Marks, including:

i.      The U.S. District Court for the Central District of California held that "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and the ENTREPRENEUR Mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, *9–10, 13 (C.D. Cal. June 23, 2004).

ii.     The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal.  *Entrepreneur Media, Inc. v. Smith*, 101 Fed. App'x 212, 215 (9th Cir. 2004).

iii.    The U.S. District Court for the Central District of California in a later case adopted the holding of the district court in the Smith case, and once again found that "the mark ENTREPRENEUR is strong distinctive mark, deserving of significant protection" and that "EMI's ENTREPRENEUR mark is a strong mark" that was infringed by defendant's ENTREPRENEUR PODCAST mark.  *See Entrepreneur*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1    *Media, Inc. v. Eric M. Dye, et al.*, No. 18-cv-0341-DOC (PLAx),

2    Docket No. 22 (C.D. Cal., Sept. 11, 2018).

3    iv.   The U.S. District Court for the Central District of California recently

4    held that "the EMI Marks, including the ENTREPRENEUR® mark,

5    have acquired extensive goodwill, developed a high degree of

6    distinctiveness, and become famous, well known, and recognized as

7    identifying goods and services that originate from EMI such that they

8    are deserving of strong protection."  *See Entrepreneur Media, Inc. v.*

9    *Alfonso*, No. 8:21-cv-00644-DOC-(JDEx), 2021 U.S. Dist. LEXIS

10   130502, at *15 (C.D. Cal. July 12, 2021) (also finding that EM's

11   rights were violated by the ENTREPRENEUR AFFILIATES

12   MASTERY and ENTREPRENEUR AFFILIATES marks).

13   v.   The U.S. District Court for the Central District of California has also

14   twice held that "the ENTREPRENEUR Mark and EMI's related

15   marks have developed a high degree of distinctiveness and become

16   well-known and recognized as identifying goods and services that

17   originate from EMI."  *Entrepreneur Media, Inc. v. Entrepreneurs*

18   *Opportunities, LLC*, No. 17-cv-01341-JVS-KES, Docket No. 20 (C.D.

19   Cal., Jan. 14, 2018); *Entrepreneur Media, Inc. v. The Innovation*

20   *Initiative, et al*, No. 17-cv-2261-JVS-KES, Docket No. 23 (C.D. Cal.,

21   August 2, 2018) (finding the same); *see also Entrepreneur Media, Inc.*

22   *v. Darren Casey*, No. 18-cv-01058-JLS-AGR, Docket No. 20 (C.D.

23   Cal., December 20, 2018) (recognizing that EM's marks are

24   protectable and have been used for over forty years); *Entrepreneur*

25   *Media, Inc. v. John Doe d/b/a/ Entrepreneur Press*, No. 19-cv-01706-

26   JLS-JDE, Docket No. 23 (C.D. Cal., October 21, 2020) (recognizing

27   the same).  These courts also held that EM's rights were violated by,

28   respectively, the ENTREPRENEUR OPPORTUNITIES mark, the

1       ENTREPRENEUR TV mark, the FIT ENTREPRENEUR

2       MAGAZINE mark, and the ENTREPRENEUR PRESS mark.

3    vi.    The U.S. District Court for the District of Colorado held that "the EMI

4       Marks, and in particular the ENTREPRENEUR® mark, have acquired

5       extensive goodwill, developed a high degree of distinctiveness and

6       secondary meaning, and become well known, famous, and recognized

7       as identifying goods and services that originate from EMI, such that

8       they are deserving of strong protection." *Entrepreneur Media, Inc. v.*

9       *Spencer et al.*, No. 1:17-cv-01637-RBJ, Docket No. 20, at pg. 8 (D.

10      Colo. Dec. 15, 2017) (also finding that EM's rights were violated by

11      the ENTREPRENEUR SUPPORT mark).

12   vii.   The U.S. District Court for the District of Connecticut has recognized

13      that "the EMI Marks, and in particular the ENTREPRENEUR Mark,

14      have acquired extensive goodwill, developed a high degree of

15      distinctiveness and secondary meaning, and become well known and

16      recognized as identifying goods and services that originate from EMI,

17      such that they are deserving of strong protection." *Entrepreneur*

18      *Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19

19      (D. Conn. Aug. 19, 2015) (also finding that EM's rights were violated

20      by the ENTREPRENEUR WEEK mark).

21   viii.  The U.S. District Court for the District of Maryland has twice

22      recognized the EM Marks as valid, strong, and distinctive.

23      *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al.*,

24      No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *id.*, Docket

25      No. 47 (Apr. 7, 2014) (also finding that EM's rights were violated by

26      the ENTREPRENEURS EDGE mark).

27   ix.    Both a Magistrate Judge and District Court Judge in the Eastern

28      District of Virginia found the ENTREPRENEUR Mark to be

1   distinctive.  *Entrepreneur Media, Inc. v. seattleentrepreneur.com*,

2   No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011) (also finding

3   that EM's rights were violated by the registration of the

4   *seattleentrepreneur.com* and *austinentrepreneur.com* domain names).

5   <u>**Defendants' Infringing Marks**</u>

6   38.   Defendants own the *entrepreneurshandbook.co* and *ehandbook.com*

7   domain names and operate websites using the ENTREPRENEUR'S HANDBOOK

8   mark, as shown below:



(*www.ehandbook.com*)

24   39.   Under the ENTREPRENEUR'S HANDBOOK mark, Defendants

25   offer a variety of goods and services, including, but not limited to, online articles,

26   podcasts, webinars, and events.

40.     Defendants advertise their goods and services under the ENTREPRENEUR'S HANDBOOK mark on various social media platforms, including, but not limited to, Facebook, Instagram, Twitter, LinkedIn, and YouTube (the "Infringing Social Media Accounts") as shown in the below examples:



(*www.facebook.com/EntrepreneursHandbook*)



(*www.twitter.com/entrehandbook*)

41.     Additionally, Defendants' articles are published and promoted by A Medium Corporation ("Medium") on its website, available at *www.medium.com*.

Specifically, Defendants' articles are published on the

*https://entrepreneurshandbook.medium.com* page, as seen below.



42.    Defendants promote themselves as a Medium publication, and they even go as far as promoting themselves as the "highest quality publication on all things startup" on Medium.

43.    Defendants have also used an "E" logo, which is an abbreviation for the ENTREPRENEUR'S HANDBOOK mark (the "Infringing E Logo").  The Infringing E Logo bears significant resemblance to EM's E Logo.  Indeed, both logos contain a white letter "E" with a black background, giving them the same overall look and feel, as seen below:



**Infringing E Logo**                    **EM's E Logo**

44.    Defendants have used the Infringing E Logo on their websites and Infringing Social Media Accounts to provide the same types of goods and services offered under the ENTREPRENEUR'S HANDBOOK mark.

45.     Defendants target their goods and services to this District by, among other things, targeting residents of this District as consumers, selling products to residents of this District, and otherwise offering goods and services in this District under the Infringing Marks.

46.     In light of EM's renown, online presence, and long history of providing goods and services under the EM Marks and E Logo, EM is very concerned that consumers will likely be confused and mistakenly believe that Defendants and their goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with, EM.

47.     Defendants will thus reap the benefits of EM's reputation and goodwill based on this consumer confusion, to EM's detriment.

48.     EM has attempted to reconcile its concerns with Defendants, including by various correspondence and follow-up requests, but Defendants have refused to engage in negotiations, let alone cease use of the Infringing Marks.

49.     After receiving one of EM's cease and desist letters, Defendants apparently agreed that the Infringing E Logo was identical to EM's E Logo and would cause consumer confusion.

50.     Defendants decided to change the Infringing E Logo in a haphazard effort of trying to address EM's concerns.  Indeed, Defendants changed the Infringing E Logo to the following:



51.     However, Defendants' logo is still concerning and constitutes trademark infringement.  Even though Defendants changed the logo from "E" to "EH," (1) the logo is still an abbreviation for ENTREPRENEUR'S HANDBOOK,

COMPLAINT
DEMAND FOR JURY TRIAL

1   which is an infringing mark that Defendants are actively using and (2) the logo still

2   uses the same color pattern as the E Logo, and overall, it has the same look and

3   feel as the E Logo.

4       52.   Given Defendants' failure to respond to EM's concerns, and

5   Defendants' continuing use of the Infringing Marks, EM brought this suit to fully

6   litigate and resolve the trademark issues between the parties.

7   ### EM Is Harmed By Defendants' Continuing

8   ### Infringement & Unlawful Conduct

9       53.   Defendants' continued use of the confusingly similar Infringing

10  Marks in commerce violates EM's valuable intellectual property rights in the EM

11  Marks, the E Logo, and EM Registrations, and Defendants' knowing, intentional,

12  willful, and malicious use of its marks is damaging to EM and EM's property.

13      54.   Defendants have used the Infringing Marks to unfairly usurp and

14  capitalize on the value and goodwill of the EM Marks, the E Logo, and the EM

15  Registrations, particularly the ENTREPRENEUR Mark.  Defendants are aware of

16  EM's strong trademark rights and reputation in the marketplace, but nevertheless,

17  use the Infringing Marks to profit from the goodwill associated with the EM

18  Marks, E Logo, and EM Registrations.

19      55.   Defendants have intentionally and knowingly capitalized off of

20  confusion between the EM Marks and E Logo (particularly the ENTREPRENEUR

21  Mark) and the ENTREPRENEUR'S HANDBOOK mark and Infringing E Logo,

22  including by providing content almost identical to EM's content, as described

23  above.

24      56.   Due to Defendants' continuing willful infringement and unlawful

25  conduct, EM is now forced to bring this Complaint to protect its valuable and

26  longstanding intellectual property rights.  EM had to retain counsel and incur

27  substantial fees and costs (and it continues to incur those fees and costs) to

28  prosecute this suit and pursue its claims.

57.     EM's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants. The public interest is best served by granting EM's requested relief against Defendants.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

58.     EM incorporates by reference the factual allegations set forth above.

59.     EM owns the EM Marks and the EM Registrations. The trademarks reflected in the EM Registrations are strong and distinctive and designate EM as the source of all products and services advertised, marketed, sold, or used in connection with the EM Marks. In particular, the ENTREPRENEUR Mark has been used for over forty years and has been recognized by federal courts as a strong and distinctive mark.

60.     EM is the senior user of the EM Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Marks.

61.     Defendants do not have authorization, license, or permission from EM to market and sell their products and services under the Infringing Marks, which are confusingly similar to the EM Marks, including the ENTREPRENEUR Mark, and which are used by Defendants with products and services that are identical and/or closely related to the particular products and services associated with the EM Marks, particularly the ENTREPRENEUR Mark.

62.     Defendants were aware of the EM Marks, particularly the ENTREPRENEUR Mark, as Defendants were on constructive notice based on EM's longstanding federal registrations, as well as on actual notice based on EM's numerous communications with Defendants about this matter. Yet, Defendants continued to use their Infringing Marks. Thus, Defendants' unauthorized use of

the confusingly similar Infringing Marks was and is knowing, intentional, and willful.

63.     As a direct and proximate result of Defendants' wrongful conduct, EM has been and will continue to be damaged.

64.     Defendants' actions therefore constitute trademark infringement.

65.     Unless an injunction is issued enjoining any continuing or future use of the confusingly similar Infringing Marks by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm EM.

66.     Defendants' activities have caused and will continue to cause irreparable harm to EM, for which it has no adequate remedy at law, because: (i) the EM Marks, and in particular the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EM's goodwill and customer relationships and is harming and will continue to substantially harm EM's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EM, are continuing.  Accordingly, EM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

67.     Pursuant to 15 U.S.C. §1117(a), EM is entitled to an order: (i) requiring Defendants to account to EM for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EM that were caused by Defendants' conduct.

68.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EM is therefore entitled to an award of treble damages against Defendants.

69.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EM is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

70.     EM incorporates by reference the factual allegations set forth above.

71.     The E Logo and EM Marks, and in particular the ENTREPRENEUR Mark, are strong and distinctive and designate EM as the source of all goods and services advertised, marketed, sold, or used in connection with those marks.  In addition, by virtue of EM's decades of use of the ENTREPRENEUR Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under that mark (as well as the EM Marks and E Logo), the EM Marks and E Logo, including in particular the ENTREPRENEUR Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States associate the EM Marks and E Logo with a single source of products and services.

72.     EM is the senior user of the EM Marks and E Logo as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Marks.

73.     Defendants were aware of the EM Marks and E Logo, and in particular the ENTREPRENEUR Mark, because Defendants were on constructive notice based on EM's longstanding federal registrations, as well as on actual notice based on EM's numerous communications with Defendants about this matter.  Yet, Defendants continued to use their Infringing Marks.  Thus, Defendants' unauthorized use of the confusingly similar Infringing Marks was and is knowing, intentional, and willful.

74.     Through their use of the confusingly similar Infringing Marks, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EM somehow

1    authorized, originated, sponsored, approved, licensed, or participated in

2    Defendants' use of the confusingly similar Infringing Marks.

3        75.    In fact, there is no connection, association, or licensing relationship

4    between EM and Defendants, nor has EM ever authorized, licensed, or given

5    permission to Defendants to use the confusingly similar Infringing Marks in any

6    manner.

7        76.    Defendants' use of the confusingly similar Infringing Marks will

8    likely cause confusion as to the origin and authenticity of Defendants' website, and

9    related goods and services, and will likely cause others to believe that there is a

10   relationship between Defendants and EM when there is, in fact, not.

11       77.    As a direct and proximate result of Defendants' wrongful conduct,

12   EM has been and will continue to be damaged.

13       78.    Defendants' actions thus constitute false designation of origin and

14   unfair competition.

15       79.    Defendants' activities have caused, and will continue to cause,

16   irreparable harm to EM, for which it has no adequate remedy at law, in that: (i) the

17   EM Marks and E Logo, including the ENTREPRENEUR Mark, comprise unique

18   and valuable property rights that have no readily determinable market value;

19   (ii) Defendants' infringement constitutes interference with EM's goodwill and

20   customer relationships and will substantially harm EM's reputation as a source of

21   high-quality goods and services; and (iii) Defendants' wrongful conduct, and the

22   damages resulting to EM, are continuing.  Accordingly, EM is entitled to

23   injunctive relief pursuant to 15 U.S.C. § 1116(a).

24       80.    Pursuant to 15 U.S.C. §1117(a), EM is entitled to an order:

25   (i) requiring Defendants to account to EM for any and all profits derived from its

26   actions, to be increased in accordance with the applicable provisions of law; and

27   (ii) awarding all damages sustained by EM that were caused by Defendants'

28   conduct.

81.    Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), EM is therefore entitled to an award of treble damages against Defendants.

82.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EM is entitled to an award of attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**

**Common Law Trademark Infringement**

83.    EM incorporates by reference the factual allegations set forth above.

84.    EM has valid and protectable common law rights in the EM Marks and E Logo.

85.    EM is the senior user of the EM Marks and E Logo.

86.    Defendants' conduct constitutes infringement of EM's common law rights in the EM Marks and E Logo.

87.    Defendants' use of the confusingly similar Infringing Marks on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and EM.

88.    Defendants' wrongful acts have permitted and will permit them to receive substantial profits based on the strength of EM's reputation and the substantial goodwill it has built up in the EM Marks and E Logo.

89.    As a direct and proximate result of Defendants' wrongful conduct, EM has been and will continue to be damaged.

90.    Unless an injunction is issued enjoining any continuing or future use of the Infringing Marks by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage EM.  EM has no adequate remedy at law.  Accordingly, EM is entitled to an injunction.

1  **FOURTH CLAIM FOR RELIEF**

2  **Common Law Unfair Competition**

3      91.    EM incorporates by reference the factual allegations set forth above.

4      92.    EM has expended significant time and expense in developing the EM

5  Marks and E Logo and the high-quality products and services it markets and sells

6  under those marks.  The EM Marks and E Logo have been very successful and

7  have developed a substantial reputation and goodwill in the marketplace.

8      93.    Through their wrongful conduct, Defendants have misappropriated

9  EM's efforts and are exploiting the EM Marks, the E Logo, and EM's reputation to

10  market and sell their goods and services under the Infringing Marks.  These actions

11  constitute unfair competition.

12      94.    As a direct and proximate result of Defendants' wrongful conduct,

13  EM has been and will continue to be damaged.

14      95.    Unless an injunction is issued enjoining Defendants' unfairly

15  competitive conduct, EM will continue to be damaged irreparably.  EM has no

16  adequate remedy at law.  Accordingly, EM is entitled to an injunction.

17      96.    Defendants have acted willfully, intentionally and maliciously, such

18  that EM is entitled to punitive damages.

19  **PRAYER**

20  WHEREFORE, EM prays for the following relief:

21      A.    An injunction ordering Defendants, and their officers, directors,

22  members, agents, servants, employees, and attorneys, and all other persons acting

23  in concert or participating with them (collectively, the "Enjoined Parties"), who

24  receive actual notice of the injunction order by personal or other service, to:

25          i.    cease all use and never use the ENTREPRENEUR'S

26          HANDBOOK mark, the Infringing E Logo, the EM Marks, the

27          E Logo, or any other mark likely to cause confusion with the

28          EM Marks or E Logo, including any misspelling or variation of

1                those Marks, in, on, or with any products or services, or in

2                connection with the, advertising, marketing, or other promotion,

3                distribution, offering for sale, or sale, of any products or

4                services, including on the Infringing Social Media Accounts;

5       ii.      never use any false designation of origin, false representation,

6                or any false or misleading description of fact, that can, or is

7                likely to, lead the consuming public or individual members

8                thereof, to believe that any products or services produced,

9                offered, promoted, marketed, advertised, provided, sold or

10              otherwise distributed by the Enjoined Parties is in any manner

11              associated or connected with EM, or are licensed, approved, or

12              authorized in any way by EM;

13     iii.     never represent, suggest in any fashion to any third party, or

14              perform any act that may give rise to the belief, that the

15              Enjoined Parties, or any of their products or services, are related

16              to, or authorized or sponsored by, EM;

17     iv.     never register any domain name that contains any of the EM

18              Marks or any misspelling or variation of those Marks, or any

19              domain name confusingly similar to any of the EM Marks;

20      v.     transfer to EM all domain names in the Enjoined Parties'

21              possession, custody, or control that include the word

22              "entrepreneur" or any misspelling or variation thereof, are

23              otherwise confusingly similar to or contain any of the EM

24              Marks, or were used in connection with the Infringing Marks,

25              including but not limited to *entrepreneurshandbook.co* and

26              *ehandbook.com.*

27     vi.     cease all use of the Infringing Social Media Accounts and any

28              similar accounts or social media websites, and never register or

attempt to register any social media account that contains the
ENTREPRENEUR'S HANDBOOK mark, any of the EM
Marks, or any misspelling or variation of those Marks, or any
other social media account confusingly similar to any of the
EM Marks or E Logo;

vii.  transfer to EM, disable, or delete the Infringing Social Media
Accounts that were used to promote the ENTREPRENEUR'S
HANDBOOK mark or Infringing E Logo, including all such
accounts in Defendants' possession, custody, or control that
include the word "entrepreneur" or any misspelling or variation
thereof, or are otherwise confusingly similar to or contain any
of the EM Marks or E Logo;

viii.  never unfairly compete with EM in any manner whatsoever, or
engage in any unfair, fraudulent, or deceptive business practices
that relate in any way to the production, distribution, marketing,
and/or sale of products and services bearing any of the EM
Marks, the E Logo, or any other mark likely to cause confusion
with the EM Marks or E Logo, including any misspelling or
variation of those Marks; and

ix.  never apply for or seek to register the ENTREPRENEUR'S
HANDBOOK mark, the Infringing E Logo, any of the EM
Marks or E Logo, or any other mark likely to cause confusion
with the EM Marks or E Logo, including any misspelling or
variation of those Marks.

B.  An order, pursuant to 15 U.S.C. § 1118, requiring the Enjoined Parties
to deliver and destroy within thirty days all prints, advertising, packaging, goods,
and other materials bearing the Infringing Marks.

C.     An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to file with the Court and serve on EM's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction.

D.     To give practical effect to the Court's injunction, an order that the social networking service or entity (e.g., Facebook) related to any of the social media accounts subject to this Order must, within fourteen (14) days of receipt of the Order, transfer, disable, or otherwise cancel those subject accounts at EM's request if the Enjoined Parties have not already done so.

E.     To give practical effect to the Court's injunction, an order that the Registry or Registrar for any of the foregoing domain names must, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those subject domain names to EM if the Enjoined Parties have not already done so.

F.     An order finding that, by the acts complained of above, Defendants have infringed EM's federally-registered trademarks in violation of 15 U.S.C. § 1114.

G.     An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

H.     An order finding that, by the acts complained of above, Defendants have engaged in common law trademark infringement.

I.     An order finding that, by the acts complained of above, Defendants have engaged in common law unfair competition.

J.     An order awarding EM damages as follows:

i.     Pursuant to 15 U.S.C. § 1117(a), EM's actual damages, as well as all of Defendants' profits or gains of any kind from its acts of

1                 trademark infringement, false designation of origin, and unfair

2                 competition, including a trebling of those damages; and

3        ii.      Punitive damages pursuant to California common law.

4       K.      An order pursuant to 15 U.S.C. § 1117(a), finding that this is an

5 exceptional case and awarding EM its reasonable attorneys' fees.

6       L.      An order pursuant to 15 U.S.C. § 1117(a), awarding EM all of its

7 costs, disbursements, and other expenses incurred due to Defendants' unlawful

8 conduct.

9       M.      An order awarding EM pre-judgment interest.

10       N.      An order awarding EM such other relief as the Court deems

11 appropriate.

12 **<u>JURY DEMAND</u>**

13       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

14 demands a trial by jury.

15

16 Dated: October 3, 2023                Respectfully submitted,

                                        LATHAM & WATKINS LLP

17

18                                        By: <u>/s/ Perry J. Viscounty</u>

19                                            Perry J. Viscounty

20                                        *Attorneys for Plaintiff*
                                       ENTREPRENEUR MEDIA, LLC

21

22

23

24

25

26

27

28